**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OSMANI VALENCIA MARTINEZ, *Petitioner*, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | No. 14-70339 <br><br> Agency No. A079-776-031 <br><br><br> AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 12, 2017
Pasadena, California

Filed July 20, 2017
Amended October 12, 2017

Before: Morgan Christen and Paul J. Watford, Circuit
Judges, and James Alan Soto,* District Judge.

Opinion by Judge Soto

---

*The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

# SUMMARY[**]

## Immigration

The panel granted a petition for review of the Board of Immigration Appeals' decision dismissing for lack of jurisdiction an appeal of an immigration judge's negative reasonable fear determination in reinstatement removal proceedings.

The panel held that under the circumstances of this case the Board's decision dismissing Martinez's appeal was the final administrative order for purposes of determining the timeliness of his petition for review to this court. The panel concluded that because Martinez filed his petition within 30 days of the Board's decision his petition was timely.

The panel noted that the government waived review of the merits of the reasonable fear determination by failing to offer any argument on it. The panel remanded for the agency to give proper consideration to Martinez's testimony about police corruption and acquiescence in MS-13 gang violence, to accord proper weight to the Department of State Country Report on El Salvador, and in particular, evidence of corruption and inability or unwillingness to prosecute gang violence, and to apply the correct legal standards to Martinez's Convention Against Torture claim.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Nisha Patel (argued), Shawn P. Johnson, and Jeffrey T. Fisher, Dechert LLP, Mountain View, California, for Petitioner.

Matthew A. Connelly (argued), Trial Attorney; Derek C. Julius, Senior Litigation Counsel; Douglas E. Ginsburg, Assistant Director; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

SOTO, District Judge:

In this case, a removed alien challenges a reinstated removal order by claiming that he has a reasonable fear of being persecuted in his home country of El Salvador. An asylum officer interviewed the alien and issued a negative reasonable fear determination, and an immigration judge concurred with that finding. The alien then appealed to the Board of Immigration Appeals, which relied on a purported lack of jurisdiction to dismiss the appeal. Petitioner argues that the evidence before the asylum officer, when properly considered, establishes a reasonable fear of torture. We remand for further consideration.

## I.

### A.

Petitioner Osmani Valencia Martinez (Martinez) was born in El Salvador.[1]  When Martinez was about eighteen years old, the gang La Mara Salvatrucha (MS-13) began a sustained recruiting effort that lasted several years and included threats of harm or death to Martinez and his family.  Martinez believed he could not go to the local police for protection, because he perceived that the police and MS-13 were intertwined.  As such, he fled to the United States in 2001.  Shortly after arriving in San Diego, California, Martinez was arrested and returned to El Salvador.  Martinez stayed in El Salvador for approximately six months, but he perceived the same problems with no viable recourse; he, therefore, returned to the United States around January 2002.  He has remained in the United States since that time, and there is no indication of a criminal record or gang involvement.

### B.

On September 26, 2013, the Department of Homeland Security (DHS) served Martinez with a notice of reinstatement, which indicated that he would be removed to

---

[1] The asylum officer and subsequently the immigration judge found Martinez credible.  As such, this Court accepts the facts in the asylum interview as true.  *See Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) ("Because neither the BIA nor the IJ made an adverse credibility finding, we must assume that [petitioner's] factual contentions are true.  As a result, the facts to which [he] testified are deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief." (second alteration in original) (internal citations and quotations omitted)).

El Salvador pursuant to the July 2001 removal order. He expressed a fear of torture if he was forced to return to El Salvador and was referred to an interview with an asylum officer on October 10, 2013. During the interview, Martinez explained that MS-13 recruited him from 1995 through 2000. He stated that the gang had two reasons for the recruitment effort: he was young, and the gang wanted to obtain money from his mother's business. He refused to report these threats to local police because he believed that MS-13 had infiltrated the police. He testified further that the same reasons persist to the present, and he fears that if he returns to El Salvador today, MS-13 will hurt or kill him. His fear of the El Salvadoran government is limited to his perceived connection between the police and MS-13 or perceived infiltration of the police by MS-13.

"[W]hen weighing the totality of the circumstances," the asylum officer found Martinez's testimony "sufficiently consistent, detailed, and plausible for purposes of establishing a reasonable fear claim." The asylum officer, therefore, found Martinez credible. However, the asylum officer's report determined that Martinez had not suffered past harm that rose to the level of torture, that any persecution he suffered was not based on a protected ground, and that although there is a reasonable chance that MS-13 would inflict serious harm on his return, such actions would not be with the consent or acquiescence of the El Salvadoran government. As such, the asylum officer determined that Martinez had not established a reasonable fear of torture or persecution. At the conclusion of the interview, Martinez requested review by an immigration judge (IJ).

Martinez appeared pro se in front of the immigration judge on December 17, 2013. The IJ explained that in her

analysis, she didn't "see anything where the officer made a mistake or error in judgment." She stated that the immigration laws in the United States are "very strict" and "don't provide any protection for people who fear recruitment by gangs . . . [because] [i]t just simply isn't a protected ground." Martinez asked if the IJ wanted any additional evidence, but the IJ declined, stating that "the officer found that you were credible . . . . But even assuming that everything you say is true, it doesn't qualify for a ground for withholding of removal or Convention Against Torture." She then agreed with the asylum officer's determination and returned the case back to DHS for removal.

Martinez mailed a notice of appeal to the Board of Immigration Appeals (BIA) on December 27, 2013, ten days after the IJ issued her written decision. The notice was deemed filed by the BIA on December 31. On January 2, 2014, the BIA sent Martinez a filing receipt, and the record from IJ proceedings was forwarded to the BIA for consideration. On January 28, 2014, the BIA filed a short order dismissing the appeal because "[c]ontrolling federal regulations provide that no appeal lies from an Immigration Judge's decision reviewing a negative Reasonable Fear Determination." On February 5, 2014, Martinez filed a petition with this Court requesting review of the IJ's negative reasonable fear determination.

## II.

### A.

We have jurisdiction to consider our own jurisdiction. *Daas v. Holder*, 620 F.3d 1050, 1053 (9th Cir. 2010). Generally, "we have jurisdiction over petitions for review of

reasonable fear determinations made in connection with the reinstatement of expedited removal orders." *Ayala v. Sessions*, 855 F.3d 1012, 1018 (9th Cir. 2017). However, a "petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). That 30-day time limit has been treated as mandatory and jurisdictional in this Circuit.**[2]** *See, e.g.*, *Yepremyan v. Holder*, 614 F.3d 1042, 1043 (9th Cir. 2010) (relying on *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995)).

Martinez filed his initial Petition for Review and Motion for Stay on February 5, 2014. As in *Ayala*, then, "[t]he central question before us is whether the BIA's dismissal for lack of jurisdiction or the IJ's [no reasonable fear determination] was the final order." *Ayala*, 855 F.3d at 1018. If the BIA's dismissal is the operative decision, we have jurisdiction to consider the underlying claims because Martinez appealed within 30 days of the order. On the other hand, if the IJ determination is the final order, we do not have jurisdiction because more than 30 days passed between that order and Martinez's appeal.

The relevant statutes provide that an order becomes final for purposes of appellate review "upon the earlier of—(i) a determination by the [BIA] affirming such [an] order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." *Id.* (alterations in original) (quoting 8 U.S.C. § 1101(a)(47)). However, when, as here, "the statutory definition of finality fails to definitively provide an answer, a removal order is considered

---

**[2]** We find it unnecessary to address Martinez's argument that statutory alterations and intervening Supreme Court precedent vitiate this precedent given the facts of this case.

final only when all administrative proceedings have concluded." *Id.* at 1019 (internal quotation marks and citations omitted).

*Ayala* provides some guidance on when reasonable fear determinations challenging reinstated removal orders become administratively final. There, we provided three circumstances that, when combined, made the BIA's order the final administrative proceeding. "First, all administrative proceedings were not concluded until the BIA rendered its order . . . [w]here the agency has advised a petitioner to pursue further proceedings before the BIA and the individual timely does so . . . ." *Id.* (internal quotation marks omitted). Second, if the IJ determination were the final order in that case, the petitioner "would be inadvertently deprived of her only opportunity for judicial review . . . where, as here, the agency misled her by providing her with contradictory and incorrect instructions . . . ." *Id.* Finally, any concerns about petitioners delaying removal by appealing to the BIA instead of directly to this Court can be minimized by the agency instituting a process to dismiss such appeals and correcting any misleading information in its notices and decisions. *Id.* at 1019–20.

The agency in this case did not mislead Martinez on its forms or decisions to the same extent as it did the *Ayala* petitioner; however, taken as a whole, we conclude that the circumstances of Martinez's case render the order from the BIA the final administrative order. Unlike with the petitioner in *Ayala*, the form Martinez received after the IJ's concurrence did not instruct him to appeal to the BIA. Nonetheless, the way forward for Martinez was far from clear. The constellation of statutes, regulations, instructions contained on various forms, and responses from the BIA

create a landscape that is confusing at best. The agency regulation relied on by the government states that "[n]o appeal shall lie from the immigration judge's decision" after an immigration judge concurs with the determination from the asylum officer finding no reasonable fear of torture or persecution. 8 C.F.R. § 1208.31(g)(1). If Martinez had taken the regulation at face value, he might reasonably have thought that the IJ decision was not subject to review—either through an appeal to the BIA or through a petition for review by this court. This reading would have been inaccurate in light of the statute that confers jurisdiction over final orders of removal on this court. *See* 8 U.S.C. § 1252. But looking to the statutes still would not have helped Martinez because a plain reading of the relevant provisions would have suggested that his administrative case would only become "final" when the BIA issued its decision or when the time when he was permitted to file such an appeal had passed. 8 U.S.C. § 1101(a)(47).

Likewise, thoroughly reading the materials that the BIA made available to Martinez—in particular the BIA Practice Manual to which he was directed by the BIA filing receipt—would have revealed that the BIA "generally has the authority to review appeals from . . . decisions of Immigration Judges pertaining to . . . the Convention Against Torture." Board of Immigration Appeals Practice Manual, § 1.4(a), available at https://www.justice.gov/sites/default/files/pages/attachments /2017/02/03/biapracticemanualfy2017.pdf (last visited June 14, 2017) [hereinafter "BIA Manual"]. And if Martinez continued reading the BIA Manual, he would have discovered that reasonable fear determinations by immigration judges did not appear on a list of issues over which the BIA did not have

jurisdiction. *Id.* at § 1.4(b).**³**  The BIA's own filing receipt could have added to the confusion Martinez faced by stating that "[i]f you leave the United States after filing this appeal but before the Board issues a decision your appeal will be considered withdrawn and the Immigration Judge's decision will become final as if no appeal had been taken," leaving a strong impression that the IJ's decision was not currently final.

The conflicting and confusing information available to aliens like Martinez makes them susceptible to being caught in a trap for the unwary.  In the regular course of events, aliens are not only permitted to seek review from the BIA, but their failure to do so precludes judicial review of their case. *See, e.g.*, *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (limiting subject-matter jurisdiction of this court to issues first raised in administrative immigration proceedings). This trap for the unwary is concerning in situations where, as here, the agency has jurisdiction over a wide range of similar issues but chooses to exempt narrow subsets of that class to special restrictions.  Additionally, many of the victims of the trap will be pro se litigants without the assistance of sophisticated counsel.  The length of time an appeal remains pending at the BIA before it issues its decision dismissing for lack of jurisdiction also means that even aliens who are diligently advancing their cases are likely to miss the deadline

---

**³** The latest version of the BIA Manual does include reasonable fear determinations in the list of issues over which the BIA does not have jurisdiction, but it appears this change was not made until approximately eighteen months after Martinez filed his appeal.  BIA Manual at "Table of Changes – July 27, 2015" ("Updated information regarding Board's jurisdiction related to reasonable fear determinations.").

for filing their petitions for review in this court, thereby forfeiting any meaningful review of the IJ decision.

"Finally, any concerns about delays in the reinstatement process caused by petitioners who appeal to the BIA instead of petitioning directly to this court should be minimal in future cases." *Ayala*, 855 F.3d at 1019. As we noted in *Ayala*, "the BIA would be well advised to institute a process for quickly dismissing such appeals" and could avoid confusing aliens by ensuring their communications are clear, consistent, and accurate. *Id.* In the circumstances faced by Martinez, however, we find that the final administrative order was the BIA's dismissal. Martinez, therefore, timely filed his petition for review with this court, and we have jurisdiction.

**B.**

The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments Martinez raised. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding that an appellee who did not address an argument in the answering brief had waived that issue). On remand, the agency is directed: (1) to give proper consideration to Martinez's testimony about police corruption and acquiescence in MS-13 violence; (2) to accord proper weight to the Department of State Country Report on El Salvador, and in particular, evidence of corruption and inability or unwillingness to prosecute gang violence; and (3) to apply the correct legal standards to Martinez's Convention Against Torture claim.

Accordingly, we **GRANT** the petition for review. The IJ's order concurring with the asylum officer's determination that Martinez did not have a reasonable fear of persecution or

torture is **VACATED**, and the case is **REMANDED** to the IJ for further consideration in accordance with this opinion.